# SUPREME COURT

OF THE

# STATE OF ARKANSAS,

AT THE

# MAY TERM, 1884.

---

## GAINUS V. CANNON ET AL.

1. TRUST: *Declaration of.*

Where one purchases land with his own money, no contemporaneous or subsequent parol declaration of trust can affect his title. There would be neither a resulting nor an implied trust. It would be within the statute of frauds, and not within the saving of section 2963 of Gantt's Digest.

2. SAME: *Purchase by one with funds of another.*

Where land is purchased by a husband with funds of his wife, there is a resulting trust in her, although the deed be taken in his name; and in a contest between him, or his heirs, and her, in the absence of all claims of creditors, his declarations, then, or afterward made, are admissible, not to prove an express trust, but to prove that the funds were hers, and raise a resulting trust.

3. HUSBAND AND WIFE: *Dealings between.*

In equity husband and wife may have separate interests—may make fair contracts with, or reasonable gifts to, each other, which, though not binding on creditors, will be supported between the parties and their heirs and distributees; and in all such cases the husband holding possession of the property will be considered as the wife's trustee.

4. SAME: *Separate use.*

A wife's separate use need not be declared by any express words, but must, nevertheless, be clearly shown to have been intended, in order to remove the presumption that the husband holds by marital right for his own benefit.

5. PRESUMPTION: *That act proceeds from obligation.*

Wherever a thing is done by one under an obligation or duty to do it, equity will presume that it is done in pursuance of the obligation or duty.

6. HUSBAND AND WIFE: *His right to her distributive share.*

At common law a husband has the marital right to receive his wife's distributive share in her father's estate, and payment to her is payment to him.

7. HOMESTEAD: *Pleading, etc.*

A complaint stating a general claim of homestead, and in a vague and indefinite way, the grounds of the claim, and praying relief, is, in the absence of a motion to make it more specific, sufficient to authorize a decree, without stating the specific facts necessary to constitute the right of homestead, if the facts be proven by the evidence.

8. AMENDMENT: *After trial.*

After proof and hearing, a formal amendment of a *defective* statement is not necessary; otherwise, perhaps, as to the total want of an essential allegation.

9. HOMESTEAD: *Hotel.*

A husband with his wife occupying one room of his hotel as their residence, does not lose his homestead right in the premises by renting out the balance for use as a hotel.

10. SAME: *Widow's right to.*

A widow who has no other place of residence, is entitled to the homestead of her deceased husband for life, whether she occupies it or not, and is not accountable to any one for rents received for it.

11. WIDOW: *Purchasing vendor's lien on homestead.*

A widow who pays off her husband's note given for the homestead, may enforce the vendor's lien against the homestead, or collect the note out of the general estate before any distribution to his heirs or distributees.

APPEAL from *Lonoke* Circuit Court, in Chancery.
Hon. J. W. MARTIN, Circuit Judge.

*John Hallum* for appellant.

1. Our statute and Constitution for 1874, creating and defining the homestead right, does not limit and restrict the uses to which the homestead may be applied. *Thompson on Homesteads and Ex., secs. 135–6–7–8–9; 37 Ark., 283 and 298.*

2. The husband never reduced the wife's money to possession—he was only the custodian and agent of the wife, upon the express condition that it was to be invested in a homestead for her. He was a trustee, and a trust attached to the property purchased with her money. As to the rights of the husband to the wife's property, see *Tyler on Infancy and Cov, ed. 1873, p. 373, sec. 244; 23 Penn., 460; 14 Ohio St., 448; 5 Wheat., 138; 3 Stewart, 375; 12 Vesey, 497; 16 Ib., 413.*

*Geo. M. Chapline* for appellee.

The legacy was not to the separate use of the wife, and having been reduced to possession by the husband, became his absolutely. *Tyler on Inf. and Cov., pp. 375 and 385.*

To claim a homestead right the claimant must bring herself within the requirements of the statute. (*Thompson on Homest. and Ex., sec. 702.*) It must be affirmatively shown that she has no separate homestead in her own right. *Art. 9., sec. 6, Const. 1874.*

The proof shows that she owned property in Mississippi; that this property was rented out as a hotel; never occupied, characterized or impressed with that of a homestead, or resided upon as a family residence. *29 Ark., 280.*

EAKIN, J. J. J. Gainus and his wife, Sarah A., were married in Mississippi, and for some time were residents of that State. They removed to this State, and J. J. Gainus died.

Many years ago, his wife was entitled to, and received as distributee of her father's estate, the sum of $900 in gold, which went into the hands of her husband. When the money was paid to her is not shown. Her father died about twenty years before the commencement of this suit, and we infer the distributive share was paid before the passage of the act of April 28, 1875, or the Constitution of 1868.

After the parties came to this State, upon the eleventh day of November, 1879, J. J. Gainus purchased a lot in Lonoke.

The conveyance was made to himself for the consideration of $600, of which a half was paid in cash, and the rest secured by note at twelve months with a lien.

J. J. Gainus died childless and intestate. His widow, after a small payment had been made, from the rents, took up the note. It was assigned to her, and she now files this bill against the collateral heirs of the husband to have her title to the lot declared and established, claiming both as owner and by virtue of a homestead right.

The cause was heard upon pleadings and proof. The point relied upon by complainant, chiefly, being this: That the money coming to the wife, from her father's estate, was her separate property. That it had been received by her husband as her trustee, to be kept and invested for her separate use; that her husband was *quoad hoc* her trustee, and made the purchase in pursuance of the trust, taking the deed in his own name under a mistake as to the law, supposing that the property would after his death go, all, to his wife, and intending that it should. There was testimony directed to establish this theory.

The Chancellor held that the legal title to the land descended to the heir of Gainus, subject to the widow's dower of one-half, there being no children; that the heirs were entitled to one-half the rents, from the death of Gainus; and she to the other half, by virtue of her dower, to be set apart to her during her natural life, and to be received and collected by herself; that she was the assignee of the note given for the purchase money, and entitled to the lien upon the property.

A Master was appointed to take an account of the rents received by complainant, and of the amount due upon the note, and of expenses, etc., connected with the subject matter. To this decree the complainant excepted.

When the report of the Master came in, no exceptions thereto were filed, both parties admitting that it was correct under the directions given. Upon that report, the court found that she had expended upon the property, in balance of purchasee money, taxes and improvements, the sum of $427.62, and had collected of rents, the sum of $615.20, being an excess of receipts over expenditures of $188 and some cents. Thereupon, a receiver, who had been appointed in the case, was continued for the collection of rents, to hold the same subject to the order of the court, after paying certain attorney's fees, against which there was no objection. The report of the Master is by consent omitted from the transcript, and the appeal is taken from the first decree, which is decisive and final in fixing the rights of the parties. That is to say, in confining the rights and equities of the complainant to her dower and advances, and in holding that there was no trust of the lands in her favor, whilst held by her husband, such as would make her the equitable owner of the whole, and that the property subject to her dower and incumbrances had descended to the heirs of the husband.

First.  As to her claim of ownership.    At the time
when her distributive share of her father's estate came to
her husband's hands, it was by the law of this State sub-
ject to all his marital rights, under the common law.   We
are not sure, from the evidence, of the residence of the
parties at the time; but that is of no importance in the
absence of proof as to the laws of Mississippi, her former
residence, and the domicile of her father.   We know that
in that State, as here, the common law was adopted as the
basis of their jurisprudence, and presume that it regulated
the rights of the parties.   In that case, the distributive
share of the wife when received by him, became his abso-
lutely, unless he received it under a contract, valid in
equity, to hold it, not as his own, but as her trustee; or
unless declining to receive it for himself, and waiving his
marital right, he, by some mode capable of definite proof,
voluntarily agreed to stand as her trustee for the amount.
This, in the absence of any question of fraud upon his
own creditors, would be good against himself, his heirs and
personal representatives.   It would be, in effect, a gift.

But the burden of proof, as to these matters, is upon the
wife, or those claiming in her right.   Until rebutted, the
common law presumption prevails, that he received the
money as his own by marital right.   And the proof should
be definite to overcome such a presumption, going not
only to the extent that he took the money for the use and
benefit of the wife, but that he meant to hold it for her
*sole and separate* use.   Mere kindly expressions by hus-
bands of their intentions to use certain property for the
benefit of their wives are quite common; and do not, of
themselves, amount to agreements to constitute themselves
trustees for the sole and separate use of their wives.   Such
is the doctrine announced by this court in the case of
*Sadler v. Bean and Wife.*   There must be something to

impart the existence of a separate property. *9 Ark.*, p. *202.*

The evidence is substantially as follows: B. V. Mc-Guffie, who closed up the business of the estate of complainant's father, says he paid Mrs. Gainus $900 in gold, and that he had heard both her and her husband afterwards say that it was intended to be used for her benefit in purchasing a home. When the purchase was afterwards' made by Gainus, she wrote to witness that she had invested her money in a home in Arkansas.

Elizabeth Pitman knew the parties long and well; says that Gainus lived at Lonoke, Arkansas, where he died; saw the money paid to Mrs. Gainus from her father's estate. It was her and her husband's intention to invest it in a home for her use and benefit. Mr. Gainus was her agent, and this was the understanding. Often heard Mr. Gainus say he intended to so invest it. The place is now the home of Mrs. Gainus. After the purchase she wrote to her friends that she had bought a home.

Complainant testifies that at the time of Gainus' death, their home and residence was at Lonoke. She regarded her husband as her agent, and when she received the money from her father's estate she turned it over to him, with instructions to buy her a home. It was invested in the Central Hotel in Lonoke. Her money was also used in improving the property. She, herself, paid off the last note. Her husband during his life recognized her as the owner, and expected the property to descend to her at his death. When the property was purchased it was in the possession of Mrs. Tague, who remained in possession until the sixteenth of February, 1880, when it was again rented to another tenant, who was in possession at the time of her husband's death.

The letter alluded to was written in January, 1880, and

was addressed to her brother (McGuffie). It is a familiar letter, such as a sister would write. It speaks of the purchase as made by herself and husband, using the plural. " We have bought a home," " and with my money, too, that I have kept so long," " at least, it will pay a part of it," " we are building now," etc. This is all detailed as news, amongst much other matter of mere family interest. Her brother, in his answer, congratulates her on her prudence in keeping the money so long for the purpose, and speaks of his having always advised her to keep her own so that nobody could take it from her. He says he had been amused to think how particular she had been with the money, and adds, " you certainly did cling to it, and at last made the best use of it." The rest, like her own, concerns family matters.

Mr. Cordey, the tenant in possession under Gainus, at the time of the latter's death, says that he often heard Gainus and his wife talk about the property, and that " it was claimed and regarded by both of them as a permanent home." He says further that "the property in question was claimed by Mrs. Gainus, from the time it was first purchased, as her private and separate property, and Mr. Gainus knew this and did not controvert it.' Mrs. Gainus, after her husband's death, was anxious and nervous about paying off the balance of the purchase money, and, to raise the amount, sold, at very low figures, a lot she had at Holly Springs, Mississippi. He often during Gainus' lifetime, heard her urge her husband to have the title to the property vested in her, and he replied " that there would be no trouble about that; that the property would be a home for them, and that it would all be hers, or go to her at his death." Mr. Gainus knew that she always claimed the property as her own, and as bought with her money, and never, at any time, disputed or controverted it.

Gainus v. Cannon et al.

On the part of defendants, there was evidence tending to show that the money paid by Gainus for the land, and work done on the premises, was partly raised by him from his own services in his occupation.

The equitable principles to be applied to this evidence, so far as they are well settled, are these:

1. If the purchase of the lots was really made by Gainus, with his own money, no contemporaneous nor subsequent parol declarations of trust can have any effect upon the title. The trust would be neither a resulting nor implied one, and would be within the purview of the statute of frauds, and would.not be within the saving of section 2963 of Gantt's Digest.

*1. Trust: Declaration of.*

2. If the purchase was made with funds which he held as trustee of his wife, although the deed might be taken in his own name, it is yet well settled that a resulting trust would spring up in her favor; and, in a contest between himself, or his heirs, and her, in the absence of all claims of creditors, his declarations made then, or at any subsequent time, may be considered, not for the purpose of showing the express trust, but as tending to establish the fact that the funds used in purchasing were, in fact, trust funds of the wife, pre-existing in his hands. They would be self-disserving declarations in the nature of admissions of facts, out of which the law would impose upon him a resulting trust.

*2. Same: Purchase by one with funds of another.*

3. In equity, husband and wife may have separate interests; may make fair contracts with each other, not in fraud of creditors, or gifts of property within reasonable limits, which, though not binding as to creditors, will be supported between the parties and their heirs or distributees. And in all such cases the husband holding possession of the property will be considered as the wife's trustee.

*3. Husband and Wife. Dealings between.*

Gainus v. Cannon et al.

4. A separate use need not be declared by any express words, but must nevertheless be clearly shown to have been intended, in order to remove the presumption that the husband held by marital right for his own benefit.

5. Whenever a thing is done by one under an obligation or duty to do that thing, he will be presumed in equity to have done it in pursuance of his obligation or duty.

The fundamental fact to be determined is this: Did Gainus have money of his wife in his hands in trust to buy a home for her separate use?

He was entitled by marital right to receive his wife's distributive share of her father's estate, and the payment to her was payment to himself. She had no right to receive and hold it in opposition to him. She might, indeed, have invoked the aid of chancery to obtain a settlement of a portion of it to her use if he had himself been forced into equity to obtain it; or, according to some modern decisions, she might probably have done so, if he had been compelled to proceed at law; but nothing of the sort occurred. It was voluntarily paid to her with her husband's assent, and became his by force of the common law; unless he, then or subsequently, by some agreement, valid between them, constituted himself her trustee. This as against all the world except creditors, he might do, without valuable consideration.

An examination of the evidence, which has been made under a very natural tendency to support her claim against the collateral heirs of her husband, fails to disclose any definite, clear argument, on his part, to receive and hold this fund as her trustee for her *separate* use. Much of it consists of correspondence, acts, and understandings, amongst others, which can in no way bind him. Much of it consists of casual expressions with regard to his wife's ownership, which are very commonly used by husbands

with regard to property obtained through the wife, or which has been furnished by the husband with a special view to the wife's comfort or gratification. It is the conventional language of domestic affection, and does not ordinarily mean to imply legal or equitable title. Throughout all there is a want of clearness about the *separate* nature of the interest to be taken by the wife in the home to be purchased. The intention may have been, quite consistently with all that has been shown, to have the husband purchase land to be used as a homestead by both, and by her in case of his death. Such appears to have been the understanding of Gainus, who took the deed to himself, thinking it would have precisely that effect. The proof that the husband received the money under a self-imposed trust to convert it into a home for her *separate* use, is too indefinite and unsatisfactory to warrant a reversal of the decree upon this point. It is unnecessary, therefore, further to pursue the inquiry as to whether she is entitled to claim the property in fee.

The bill states that the property was purchased as a homestead for her, and that she "claims and sets up a homestead interest in the same, and prays the court to so order and decree." It states, further, that she went into possession by tenant and actual occupancy immediately after the purchase, and that her husband spent her money in improving it, and afterwards died away from home. Upon a motion to make this part of the complaint more specific, if such had been made, the Chancellor should doubtless have considered the bill defective in certainty and precision. There is no positive allegation "*totidem verbis*" that the husband was the head of a family, and resided upon the place at the time of his death; nor of the area of the lot, nor the value, nor that she had no other homestead, if she were required to negative that. The claim is defec-

7. HOME-
STEAD:
Pleading,
etc.

Gainus v. Cannon et al.

tively stated, but, nevertheless, so stated as to advise defendants generally of its nature, and to show that if sustained by proof it would be valid. It is a general claim of homestead; accompanied by a prayer for general relief, and showing, in a vague and inferential way, the grounds of the claim.

**8. AMENDMENT: After trial.** But the defendants did not require the complaint on this point to be made more specific. They *denied* that Gainus had any fixed home, and went to hearing on that. If the proof shows complainant to be entitled to a homestead, it is too late for the defendants to insist that she would not be entitled to a decree for it, on account of the defect in her mode of claiming it. If such objection to granting the relief had been indicated in the findings and decree of the Chancellor, she might, even then, have made the amendment. But after proof and hearing, a formal amendment of a *defective* statement is not necessary; *secus*, perhaps, as to the total want of an essential allegation.

**9. HOMESTEAD: Hotel.** As to the proof upon this point, it sufficiently appears that the parties resided in Lonoke; that Mrs. Ganius had no other place of residence, and that both she and her husband claimed this property as their home, and that it was much below the value of $2,500. These facts are deducible from the proof, and in the absence of any denial, or controversy on the point, we may well presume that the lot did not exceed an acre in area. It would be very unusual to find a lot of that size in any subdivided block, in any platted town—quite out of the usual course of affairs.

Specially upon the point of residence, a witness who knew the parties intimately, and who rented the premises from Gainus, save what was reserved, says: "I occupied the property from February, 1880, up to the present time as tenant. I often heard Mr. Gainus and his wife talk about the property. It was claimed and regarded by both

of them as a permanent home. The large room, up stairs, in the east end, was specially designated and fitted up by them as a private room for themselves, and reserved by them as a private room." It was during such occupancy and claim that Gainus died, suddenly, away from home.

We can conceive of no good reason why a couple, having no children, may not claim and hold a homestead in that way. If one room suffices all their wants there is nothing in the law to compel them on that account to dispense with as large a house as they may choose and be able to own, or to prevent them from making their homestead available in their living, by renting them out for hotel, or other purposes. The important thing is to see that it be really their place of residence, claimed *bona fide*, with the intent to make it a permanent home. It is a strange and irrational idea, sometimes advanced, that a man ought to lose his homestead as soon as he attempts to make any part of it subservient to a trade or occupation, or to make it helpful in family expenses. Homestead laws are liberally construed, and this would be a very illiberal restriction. It is the policy of the State to encourage every freeman to the exercise of industry, thrift, and good management of his resources; and within a limited area to make it as valuable as possible. It makes better citizens, and increases the taxable wealth of the body politic.

The husband of complainant in his lifetime did not forfeit, or fail to acquire, a homestead right, by renting out all the spare rooms of his house as a hotel. He reserved what sufficed his family. He did not hold the rooms as a guest under a landlord, but in his own right.

We think the Chancellor erred in refusing to declare the complainant entitled to the property as a homestead during her natural life. She is entitled to that whether she may continue to reside upon it or not. *Const. of Ark., art. 9, sec. 6.*

10. Widow's right to homestead free of rents.

Gainus v. Cannon et al.

It follows that she is not accountable for any of the rents and profits. They are all absolutely hers.

11. Widow, paying vendor's lien, entitled to reimbursement.

He correctly held that she was entitled to be paid the note for the balance of the purchase money of which she had taken the assignment.

The upaid note, although a lien upon the land, which practically she can not enforce as a specific lien, without detriment to her home, is nevertheless a primary charge upon the general estate of her husband. She has an equity to have the debt discharged before any property shall go to heirs or distributees, in exoneration of her rents and profits advanced to pay it off. If the husband had discharged his duty, the rents and profits would have been hers absolutely. Since she was forced by the sacrifice of her own means to discharge his debt, she is entitled to full restitution in addition to the rents and profits. These she does not take by grace of the husband, but by law.

The Chancellor, we think, should have denied so much of the prayer as claimed the property as her own in fee, declaring the fee to have descended to the heirs of J. J. Gainus, subject to all claims of dower and homestead on the part of the wife, and to all debts against the estate; and should have declared her entitled to the property as a homestead during her natural life, with all the rents and profits, free from accountability to any one whatever; and should further have declared her subrogated to all the rights of the creditor, in the note which she paid off, to be, with interest, a subsisting charge against the estate, to be enforced in any proper mode she might elect, unless paid by the heirs for the relief of the inheritance. This would have been sufficient in this suit, since he could not know whether she would be advised to proceed at once against the property on the specific lien, or to raise an ad-

ministration and prove the debt, to be enforced against the residuary interest.

The accounts of the receiver must be passed by the Chancellor below, and any balance in hand should be paid at once to complainant, allowing all proper charges made by the receiver.

For the errors above indicated, reverse the decree, and remand the cause, with instructions to the court below to enter a decree, and make further proceedings in accordance with this opinion, and the principles and practice in equity.