80      37
d81     152

## SPURLOCK *v.* SPURLOCK.

### Opinion delivered July 23, 1906.

1. DIVORCE—ADULTERY SUBSEQUENT TO SUIT.—Where plaintiff alleged that defendant, his wife, was guilty of adultery with a person named prior to the commencement of a suit for divorce, evidence of adultery with such person after the bringing of the suit was admissible as tending to prove a lustful rather than innocent relationship prior to the suit. (Page 39.)

2. SAME—WIFE DISCHARGING LIEN ON HUSBAND'S HOMESTEAD—SUBROGATION.—Notwithstanding a divorce was granted to a husband on account of the wife's misconduct, she will be subrogated to the rights of a mortgagee whose lien upon her husband's homestead she discharged with her own earnings (Page 40.)

3. HUSBAND AND WIFE—CONTRACTS.—*It seems* that a husband and wife can not contract with each other. (Page 42.)

4. DIVORCE—CHARGING WIFE WITH RENT OF HOMESTEAD.—On granting a divorce to a husband, equity will not charge the wife with the rent of the common homestead, though she had used it for a hotel. (Page 43.)

Appeal from Fulton Chancery Court; *George T. Humphries,* Chancellor; reversed in part; affirmed in part.

*Sam H. Davidson,* for appellant.

1. The cause of divorce must have occurred or existed within five years next *before* the commencement of the suit. Kirby's Digest, § 2678, subdiv. 3. Evidence tending to prove acts of adultery subsequent to the commencement of the action, and with a party other than the co-respondent named in the complaint, should have been excluded. The particular offense alleged must be proved. 51 Am. Dec. 219; 6 Johns. Ch. 347; 5 N. H. 195; 24 Mich. 482; 2 Bishop, Mar. Div. & Sep. § 1343; 39 Ill. App. 644; 77 Pa. St. 31; 20 N. J. Eq. 216; 26 Mich. 437; 54 Hun (N. Y.), 490; 3 Elliott on Ev. § 2033. Plaintiff's testimony as to adultery with Bailey being entirely uncorroborated, the chancellor's finding in that respect was erroneous.

34 Ark. 37; 38 Ark. 119. To establish adultery by circumstantial evidence, the circumstances, taken together and combined, must tend to show: (1) the lustful disposition of the party charged toward the alleged paramour, (2) a like disposition on the part of the latter, and (3) opportunity to commit the act. Abbott's Trial Evidence, tit. Divorce, 744; 4 Eng. Ecc. 438; 5 Clarke (Ia.), 204; 31 Wis. 535; 101 Mass. 111; 2 Bishop, Mar. Div. & Sep. § 1370. If appellee saw what he testifies to and took no steps to prevent it, he is guilty of connivance, and can not complain. "The husband watching the wife connives at adultery and can not obtain a divorce." 2 Bishop, Mar. Div. & Sep. § § 213-216, 228, 245, 237; 11 H. L. Cas. 1; 21 N. J. Eq. 70; 41 N. J. Eq. 224; 2 Greenleaf, Ev. § 51; 68 Conn. 186; L. R. 1 Prob. & Div. 734; 15 Am. Dec. 210; 3 Hagg. Eccl. 58; *Ib.* 129; 41 Barb. 114.

2. It is in testimony that appellant paid for the hotel in full, and that when she paid the last of the indebtedness the trustee executed a deed to her for the property, which appellee took from the postoffice and had changed. The legal title was in appellant. Putting the deed in the postoffice addressed to the grantee is a sufficient delivery. 5 Watts, 343. The wife, though in the wrong, is entitled to all such property as was her own before marriage or has been accumulated in whole or in part by her own industry. 2 Bishop, Mar. Div. & Sep. § § 866-7; 32 Ia. 198; 36 N. H. 240; Kirby's Digest, § 5213. Keeping a hotel is a business; and if appellant acquired a hotel by paying for it out of her business, it is hers. Abbott's Trial Ev. 175; 59 Barb. 61; 36 Ark. 586.

*Charles E. Elmore, J. L. Short* and *Campbell & Stevenson,* for appellee.

1. Upon the question of adultery the finding of the chancellor will not be disturbed unless against the weight of the evidence, and clearly so. 44 Ark. 219; 42 Ark. 246; 49 Ark. 465; 31 Ark. 85. Adultery must almost invariably be established by circumstantial evidence. As to the nature of the evidence which is considered sufficient, see 2 Greenleaf on Ev. § 40; 64 Ill. 329; 83 Ill. 584; 162 Ill. 589.

2. There is no testimony either that appellant paid for the hotel, or that appellee and Elmore "changed or destroyed the deed

made by the trustee. The title was already in appellee, and it was not material to whom the release of the mortgage was made.

HILL, C. J. The appellee, T. J. Spurlock, sued appellant, Mary J. Spurlock, his wife, for divorce, alleging adultery with several parties. She denied all the charges against her, and made countercharge of cruel treatment, and asked that a divorce be granted her on that ground. She makes these allegations in pleadings and evidence in regard to their property interests: That she and her husband were engaged in the hotel and mercantile business at Evening Shade, and sold out there and re-invested in like enterprises at Mammoth Spring, Spurlock conducting the mercantile business and she the hotel business; that the first hotel burned, and Spurlock collected about $1,000 insurance, which he used in his grocery and other enterprises, and which did not go to her; that a mortgage to a building and loan association for $1,000 was placed on the property to pay for the re-building of the hotel; that she paid said mortgage herself, and her husband paid no part of it; that she purchased a lot of hogs and cattle and hotel furniture, and erected a sample room, all from her separate earnings. In general, she charged that she ran the hotel, earned all it made; that it was understood she had that business, and her husband the mercantile; that she supported both from the hotel business and helped him, and he did not help her; and in justice and equity should be the sole owner of the hotel property. On the other hand, Spurlock charges that he ran the business with her help in looking after the servants when he was not there. The hotel was their home. Even after their separation, both lived there in separate rooms.

The chancellor granted the husband the divorce on grounds of adultery in the wife; found the hogs, cattle and hotel furniture and the sample room were the separate property of Mrs. Spurlock; found against her as to the hotel property; and she appeals; and Spurlock appeals from so much of the decree as finds any of the property to be Mrs. Spurlock's.

1. The first question is as to the adultery charges against Mrs. Spurlock and the countercharge of cruel treatment against Mr. Spurlock.

The appellant objects to certain testimony tending to prove adultery after the suit was filed. The cause of divorce must

exist before the commencement of the suit. Kirby's Digest, § 2678. But her relations with this co-respondent were shown to have commenced before the suit, and evidence of adultery with him after the bringing of the suit would be admissible, not as a cause of divorce, but as tending to prove a lustful rather than innocent character to her relations with him prior to the suit. The chancellor found her guilty with him before the commencement of this action. The preponderance of the evidence is against Mrs. Spurlock on both these issues, and it would serve no useful purpose to review it, and the decree as to the divorce is affirmed.

2. The chancellor found that the hogs, cattle and hotel furniture and the sample room built on the hotel grounds were the separate property of Mrs. Spurlock, and the court is of opinion that the weight of the evidence sustains that finding, and the decree on that issue is affirmed on the cross-appeal.

3. Mrs. Spurlock claims that the hotel property was purchased with money derived from her separate business of hotel keeper before and after it was rebuilt; that no part of her husband's means, earnings or services have acquired that property. Mr. Spurlock denies all of this, and it can not be said that the preponderance is with her, and the finding of the chancellor is against her on this. But as to this fact the preponderance of the evidence is decidedly with Mrs. Spurlock: That she ran the hotel as a separate business; that her husband was no more service to her in that business than she was to him in the grocery and mercantile business. Each was conducting a business enterprise on his or her own account; and she worked hard and with fair success in the hotel business, and from the proceeds of the hotel business the mortgage of $1,000 upon the hotel property was paid by her in monthly installments, except a balance of a few hundred dollars, and that she discharged with money borrowed from friends. While Mr. Spurlock denies most of these facts, yet Mrs. Spurlock is so strongly corroborated as to these matters that the court is convinced the above statement is the truth of the case. The question is, what are the equities on the facts above stated? It is a question of first impression in this State, and probably elsewhere, for most States have statutes giving the divorce courts discretion in dividing the property.

The statute in this State (Kirby's Digest, § 2684), as construed in *McNutt* v. *McNutt,* 78 Ark. 346, does not reach to this case.

A married woman may carry on a business venture, and the earnings therefrom are her own. Kirby's Digest, § 5214. A husband has such an interest from the marital relation in the wife's homestead that he may invest his means in improving it, up to the maximum value, and the homestead character of the property will withdraw what he invests in it from the reach of his creditors. *Pullen* v. *Simpson,* 74 Ark. 592.

The right of subrogation to one paying a debt for another is extended to sureties, to junior incumbrancers, to creditors paying an incumbrance on their debtor's property, to legatees and joint heirs relieving the inheritance of liens, to life tenants freeing the fee of a mortgage, to widows discharging debts against their husbands' estates, and to many other analogous instances. Harris on Subrogation, § § 13, 14, 696-697. The theory is that the payment has been made by one occupying a relation to the property other than that of a stranger or volunteer, who, on account of such interest, discharges a mortgage or other lien against the property. Equity, to save an injustice being done, will subrogate the one discharging the mortgage or lien to the rights which the mortgagee or lienholder would have had if he (the payer) had not discharged the mortgage or lien. The Tennessee court applied this doctrine in favor of a deserted wife who had paid off a mortgage on an abandoned homestead of the husband. *Roach* v. *Hacker,* 2 Lea, 633. And this application is approved by a learned writer on the subject. Harris on Subrogation, § 705.

Here the homestead which sheltered both the parties was incumbered. The wife's earnings, which she could have invested elsewhere and retained beyond question as her own, she invested in the property which the law protected from the reach of creditors and gave to her as a home for life against heirs and creditors. Certainly, her interest was as substantive as a life tenant's or any of the other enumerated persons to whom subrogation has been accorded upon discharge of incumbrances against the property in which the interest inheres.

It is true that it is her own misconduct which has caused he severance of the marriage tie and the failing of these tangible

rights inhering in the husband's homestead. But it is inequitable for this misconduct to deprive her of the right of subrogation which equity accords to one protecting a property interest by discharging a lien upon the property. It would be contrary to good conscience for the husband to profit by the wife's earnings discharging this mortgage on his property when she devoted them to that purpose, not as a gift to him, but to protect a property in which she had an interest hardly less complete than his own.

The court is of opinion that so much of the decree as denied appellant relief as to the hotel property shall be reversed, and the cause remanded, with directions to enter a decree subrogating her to the rights of the mortgagee whose mortgage she discharged, and it is so ordered.

### ON REHEARING.

### Opinion delivered October 8, 1906.

HILL, C. J. Appellee presents strongly his case for rehearing, and the court has gone carefully into the facts again.

The first two points made are against the conclusion reached that Mrs. Spurlock conducted the hotel as a separate business. Counsel overlook the fact that Mrs. Spurlock was corroborated on this point by many disinterested witnesses. The next point is that the court erred in finding that Mrs. Spurlock paid off the $1,000 mortgage on the hotel. Mrs. Spurlock is corroborated on that by three witnesses who testified to statements to that effect made by Spurlock himself.

It is insisted that, because Mrs. Spurlock claimed that there was a contract between her and her husband that she was to run the hotel and pay off the mortgage and have all above the payments on the mortgage as her earnings, she can not claim subrogation. Counsel overlook the fact that Spurlock positively denies the existence of such a contract. It rested on an affirmation by her and a denial by him, and the court paid no attention to it, for it could not be said to be proved; and, if it were proved, it was absolutely void, as husband and wife can not contract between themselves. Appellant can not defeat subrogation by interposing a void contract which he denied had any existence.

Subrogation is of two kinds—conventional and equitable. Conventional subrogation springs out of contracts providing for

it, and equitable subrogation springs from the equities of a case, and frequently is the outgrowth of void contracts, sales, mortgages or liens. The court was applying equitable, and not conventional, subrogation in this case. Mrs. Spurlock paid the mortgage to free the common home from its burden, and the divorce has brought to wreck all the common purposes and ends sought to be furthered by lifting the mortgage from the hotel. The rights of the parties must be readjusted, and it seems to the court to be equitable and right to subrogate Mrs. Spurlock to the interest of the mortgagee, whose mortgage on her husband's property she paid.

The next point made is that the court did not make an equitable division of the property. The court is not clothed with power, as chancery courts are in many States, to make an equitable division of property on dissolution of a marriage, and did not attempt to exercise such power. The equities of the case considered by the court were not a division of the property, but what equities she had towards the property which she had freed of mortgage.

Appellee asks that Mrs. Spurlock be charged with rent during the time she ran the hotel. This would manifestly be inequitable. The hotel was a homestead, and there can be no question of rent between husband and wife for the common homestead for themselves and their daughter. Both occupied and enjoyed it, and he received his board of himself and daughter and his taxes from Mrs. Spurlock.

The court has merely applied to the peculiar facts of the case the well-known rules of subrogation.

The motion is overruled.