## LONG *v.* HOFFMAN.

### Opinion delivered May 20, 1912.

1. HOMESTEAD—ABANDONMENT—EVIDENCE.—Where there was evidence tending to prove that an intestate owning an urban and a rural residence had abandoned the latter, a finding of abandonment made by the chancellor, not clearly against the weight of the evidence, will be sustained on appeal.   (Page 567.)

2. ADMINISTRATION—ORDER OF SALE OF LAND—VALIDITY.—An order of the probate court directing a sale of land of an estate to pay off a debt secured by a mortgage on land of the estate can not be collaterally attacked because the debt was not probated nor because there were sufficient personal assets in the administrator's hands to pay debts without selling land.   (Page 578.)

3. SAME—SALE OF LAND FOR DEBTS—SECOND OFFERING.—An order for the sale of land, after confirmation, can not be assailed collaterally because it was made without waiting twelve months after the first offer, as required by Kirby's Digest, section 200, if on the sale the land was sold for two-thirds of the appraised value.   (Page 578.)

Appeal from Clay Chancery Court, Western District; *Edward D. Robertson*, Chancellor; affirmed.

*J. S. Jordan* and *F. G. Taylor*, for appellants.

1. The probate court has no jurisdiction to order the sale of lands of an estate to pay a debt which was never probated. 38 Ark. 471; 31 Ark. 539.

2. Where the settlement of an administrator shows that he has funds on hand sufficient to pay all probated debts, the court is without authority to order a sale of the lands of the estate. 46 Ark. 373, and cases cited; 52 Ark. 320.

3. In order to confer jurisdiction to order a sale to pay debts, the petition therefor must state an account of all the debts against the estate and of the assets on hand. Kirby's Dig., § 187.

4. A probate court has no jurisdiction to order the sale of the homestead of the decedent. 69 Ark. 1, and cases cited. Removal from a homestead, no matter for how long, will not be considered an abandonment if there is a *bona fide* intention to return. 48 Ark. 539; 37 Ark. 283; 55 Ark. 55; 56 Ark. 621. See also 96 Ark. 171; 82 Ark. 367; 47 Ark. 445; 29 Ark. 290.

5. The sale in this case having been made within one year after the first offering, it was void. Kirby's Dig., § 200; 52 Ark. 213.

*J. L. Taylor* and *G. B. Oliver*, for appellees.

1. The testimony is sufficient to sustain a finding that deceased had abandoned the land as a homestead, and this a husband can do without the consent of the wife. 68 Ark. 76; 81 Ark. 154.

2. Sale was not void because made within one year after the first offering. If so made, it was a mere irregularity which was cured by confirmation. 11 Ark. 12; 52 Ark. 213.

3. The court had authority to order the sale to pay the mortgage debts. 11 Am. & Eng. Enc. of L. 1902, 1159; 18 Cyc. 695 and notes; *Id.* 822.

McCULLOCH, C. J. This is an action instituted in the chancery court by the widow and minor children of S. M. Long, deceased, to cancel a sale by the administrator of said

decedent of certain real estate, a part of which, the plaintiffs
allege, constituted the homestead of said decedent. Cancellation of the sale is sought principally on the alleged ground
that the homestead was included, and also on certain
other grounds which will be stated later. S. M. Long
died on December 6, 1906, and was then the owner of
a farm about two and one-half miles from Corning, Arkansas,
and also owned several lots in the town of Corning, on which
was situated a dwelling house and barn. He had owned the
farm about fifteen years, and occupied it as his home, but for
several years had occupied, alternately, the house in town during
a portion of the year and the dwelling on the farm for the remainder. He usually spent the spring and summer on the
farm and the fall and winter in town, that being the season
for sending his children to school. He kept some of his furniture at each house. In August, 1905, he rented out all of
his farm for the succeeding year except a small amount of
the land, which he expected to cultivate in corn, and also
rented the dwelling house on the farm to one of the tenants,
but reserved a room in it for himself. He returned to
the house in town with his family, as usual, in September,
1905, and they continued to reside at the latter place up to
the time of his death, which occurred at that place. During
the crop season of 1906 he went back and forth between the
house in town and the farm, staying at both places a portion of the time, but his family did not return to the farm
at all. After his death the family continued to reside in the
house in town, and no steps were taken to have the homestead set aside until this suit was instituted, though Mrs.
Long, one of the plaintiffs, claims that she spoke to the county
judge about having the farm set apart to her as a homestead,
and she testified that she also told the administrator, Mr.
Moore, that the farm was the homestead; but the latter testified to the contrary, and stated that when he was proceeding
with the sale of the property for the purpose of paying debts
the widow requested him to sell the farm, rather than the house
in town. The testimony shows that the house in town was
more commodious and better situated for occupancy by decedent and his family, and that it was better furnished in
every way. Mrs. Long testified that they moved to town

for the purpose of educating the children, and failed to return during the summer of 1906 for the sole reason that the condition of her health was such that it was inconvenient for them to go to the country. She stated that her husband repeatedly spoke of the farm as his homestead, and expressed his intention of returning there to live and of building a more suitable dwelling thereon. There were other witnesses who corroborated her as to statements made by deceased indicating his intention to return to the farm and retain it as his homestead. On the other hand, the defendant introduced several witnesses who testified that deceased made repeated efforts to sell the farm, especially after he moved to town the last time. Several of plaintiff's witnesses testified as to deceased expressing his desire or intention to sell the farm. In fact, it seems to be undisputed that deceased made efforts to sell the farm. The proof shows that he repaired the house in town, and shortly before he died added another room to it. It is, therefore, well established by the testimony that the deceased did not live on the farm for more than a year prior to his death, but was living at his dwelling house in the town of Corning, and the question of fact arises whether he had the intention of returning to his farm and occupying the same as his homestead. This, as we have said, is mainly a question of intention, as manifested by the circumstances or declarations. *Stewart v. Pritchard*, 101 Ark. 101. The chancellor made no special findings of fact, but we assume, from the decree he entered, that he reached the conclusion that decedent had left his farm without intention of returning to it as a home, and that it did not constitute his homestead at the time of his death. The testimony is conflicting, and it is somewhat difficult to determine where the preponderance really lies on this issue. We are unable to say that the conclusion of the chancellor is against the preponderance of the testimony, and therefore it is our duty to follow his findings. While there is much testimony tending to show that decedent expressed an intention of returning to the farm, yet, when we consider the fact of his repeated efforts to sell the place, and the fact that his dwelling house in town was better suited as a home for his family, and the fact that he continued to add to it up to the time of his death, we are led

to the conclusion that he regarded the latter as his homestead, and had abandoned his intention of returning to the farm. At any rate, we do not feel that the state of the proof is such that we are warranted in disturbing the finding of the chancellor on this issue.

The farm was mortgaged to one Lepp to secure a debt amounting to about $3,100, and there were probated claims against the estate amounting to nearly $1,400. The mortgage debt to Lepp had not been probated, and the next assault upon the validity of the sale is that the probate court should not have ordered a sale to pay an unprobated, though secured, debt of the decedent. It is unnecessary to determine whether the probate court had jurisdiction to order, for the protection of the estate, a sale of land for the purpose of paying off an unprobated debt secured by a mortgage on land of the estate. There were other debts of the estate which had been duly probated, and the probate court was the proper forum to determine the necessity for the sale. The judgment of the probate court can not be collaterally attacked. *Hoshall* v. *Brown*, 102 Ark. 114. Nor can the judgment of the court confirming the sale be attacked collaterally on the ground that there were sufficient personal assets in the hands of the administrator to pay debts without selling land. That, too, was a matter within the jurisdiction of the probate court, and its decision was final, in the absence of fraud in the procurement of the judgment.

The validity of the sale is also attacked on the ground that a second offer of sale of the land was improperly made without waiting twelve months after the first offer. The statute provides that, "if from any cause the administrator or executor should fail to sell any lands and tenements ordered to be sold by the court at the time specified in such order, he shall report the facts to the court, accompanied by his affidavit of the truth thereof, and it shall then be the duty of the court to make an order that the same shall be offered for sale at the end of twelve months thereafter to the highest bidder, and it shall be the the duty of the executor or administrator to carry such order into full force and effect." Kirby's Digest, § 200. The statute also provides that the land shall be appraised, and that on the first offering it shall not be sold for less than

two-thirds of the appraised value. The obvious purpose of the statutes referred to is to protect the estate from an improvident sale and to require the lapse of twelve months from the date of the first offering before the land can be sold at less than two-thirds of the appraised value. Where the lands are sold, under the authority of the court, for two-thirds of the appraised value, the sale can not be defeated, at least in a collateral attack on the judgment of confirmation, on account of the sale having been made within twelve months after the first offering. In this case it appears that the lands brought at least two-thirds of the appraised value, and the sale was confirmed by the court.

Decree affirmed.