## MCDANIEL *v.* CONLAN.

### Opinion delivered June 17, 1918.

1. HOMESTEAD—CHARACTER OF MANSION HOUSE.—Where land is claimed as a homestead, the character of dwelling in which the claimant lives thereon is immaterial.

2. HOMESTEAD—TEMPORARY ABSENCE.—The homestead right is not lost by the temporary absence of the one claiming the homestead right.

3. HOMESTEAD—ABSENCE.—Whether a homestead has been abandoned is a question of intent.

4. HOMESTEAD—RIGHT OF WIFE BEFORE ASSIGNMENT OF DOWER—RENTS. —The widow succeeds to the husband's right of homestead, and she may occupy the same through her tenants and receive the rents until her dower is assigned.

5. SUBROGATION—WHERE WIDOW DISCHARGES MORTGAGE DEBT OF DECEASED HUSBAND—NATURE OF THE RIGHT—PARTIES.—Where a widow voluntarily discharges a mortgage debt, for which her husband's estate is liable, she is entitled to be subrogated to the claim of the mortgagee, and has a lien on the lands to that extent. The right of subrogation and the equitable remedy growing out of such right, which the widow may invoke to declare the lien are independent of the mortgage or deed of trust, and in enforcing the same the trustee and creditors need not be made parties.

6. LIFE ESTATES—ENCUMBERED PROPERTY—PAYMENT OF INTEREST.—It is the duty of the life tenant to keep down interest, where the property is subject to encumbrance, to the extent of the life tenant's interest.

Appeal from Lee Chancery Court; *E. D. Robertson*, Chancellor; reversed in part, affirmed in part.

*J. W. Morrow,* for appellant.

1. The probate court had no authority to make the order vesting the title to real estate in the appellee, Effie Conlan. 79 Ark. 112; 70 *Id.* 25; 92 *Id.* 143. No compliance was had with Kirby's Digest, § § 2720-1-2.

2. Under stipulation of counsel and depositions no service, personal or constructive, was had on appellant. K. & C. Dig., § 5153. She was a resident of Lee County.

3. The widow takes subject to the deed of trust. Mrs. Conlan joined in the deed of trust to Goodman Bros. and released all homestead and dower rights. On the death of her husband she had only a life estate subject to the Goodman trust deed, her husband's interest was only an equity of redemption. The widow had no greater rights than her husband, and she assumed the burden of debt on his death. As her husband had only an equity of redemption, she takes only that equity and so must contribute to the payment of the mortgage debt. 121 Ark. 74. She was not entitled to subrogation to the Goodman debt. 55 Ark. 225; Thompson on H. & Ex. 549, 583; 121 Ark. 64; 68 *Id.* 449; 199 S. W. 83; 3 Pom. Eq. Jur. (3 ed.), § 1223; 2 Jones on Mort. (4 ed.), § 1067; 1 Scribner on Dower (2 ed.), 537-9; 16 Cyc. 634; 101 Ark. 296; 81 *Id.* 152; 87 *Id.* 61; 102 *Id.* 312.

4. The land was not the homestead of Jas. G. Conlan. He only occupied it temporarily—it was not his home. Mrs. Conlan was a non-resident. It was not her homestead. If it was her husband's homestead, she abandoned it. 101 Ark. 103; 74 *Id.* 88; 76 *Id.* 575; 101 *Id.* 296; 107 *Id.* 535, etc. Only residents of Arkansas can claim homestead. 34 Ark. 111; 24 *Id.* 152; 53 *Id.* 182; 52 *Id.* 353; 21 Cyc. 470.

5. Subrogation being equitable in its nature, can not be inferred. Creditors whose rights are sought are necessary parties. 37 Cyc. 388; 56 Ark. 574; 76 *Id.* 171; 56 *Id.* 563.

6. On the death of Conlan, all accrued rents should have been applied to the mortgage debt. 67 Ark. 239; 72

*Id.* 272; 83 *Id.* 416; 14 Cyc. 113; 1 Taylor on Land & T. (9 ed.), § 390. It was the widow's duty to contribute to the payment of the trust debt and she was not entitled to subrogation. She joined in the trust deed and released her dower and homestead. 121 Ark. 64; 64 *Id.* 499; 16 Cyc. 634; 106 Ark. 207; 3 *Id.* 368; 74 *Id.* 138; 37 Cyc. 388.

7. Goodman Bros. were necessary parties. 56 Ark. 574; *Ib.* 563; 76 *Id.* 171; 16 Cyc. 632.

8. A widow may abandon her homestead. 48 Ark. 230; 51 *Id.* 432.

9. Mrs. Conlan's half interest was more than eighty acres and without the limits of a city and the burden was on her to show it not to be worth more than $2,500, which she did not do. 67 Ark. 22; 70 *Id.* 69.

*Daggett & Daggett,* for appellee.

1. All controversy as to the facts is settled by the findings of the chancellor. There is ample evidence to sustain his findings.

2. The personal property of James G. Conlan was absorbed by the expenses of his last illness and burial.

3. The lands were the homestead of James G. Conlan. Mrs. Conlan paid the debts and was subrogated to the rights and lien of Goodman Bros., and the chancellor so found. 80 Ark. 37; 53 *Id.* 545; 53 *Id.* 545; 42 *Id.* 503, 516.

4. The proof is clear that the land was the husband's homestead, and on his death it became the widow's. If it exceeded eighty acres and was worth more than $2,500, it was appellant's duty to have the probate court measure and set off her dower and homestead, and until this was done Mrs. Conlan was entitled to possession and rents. Kirby's Digest, §§ 2703-4; 79 Ark. 408; 106 *Id.* 9; 113 *Id.* 134; 115 *Id.* 358.

5. The trustee under the Goodman mortgage was not a necessary party. The mortgage was paid off and satisfied, and Mrs. Conlan is not trying to foreclose that lien. Subrogation is a creature of equity. The law casts upon the heir the duty to pay encumbrances and not upon the widow. The land was a homestead. Mrs. Conlan

has held possession since her husband's death and is entitled to the rents. She does not have to reside upon the land, but she has never abandoned it. The decree is just and correct.

WOOD, J. This suit was instituted by the appellant against the appellees to quiet the title to and to recover the possession of certain lands in Lee County, and judgment was also asked for the rents and profits during the time that the appellant alleged that she had been deprived of the use of the lands.

The facts are substantially as follows: James Conlan owned the lands in controversy. He died intestate and in possession of the same in 1885. Surviving him was his widow, Mrs. O. V. Conlan, and appellant, and James G. Conlan, his children. On March 5, 1907, Mrs. O. V. Conlan, the appellant, and her husband, A. J. McDaniel, James G. Conlan and his wife, Effie N. Conlan, executed a deed of trust to secure Goodman Bros. for notes of that date and amounts due as follows: March 25, 1908, $825; March 25, 1909, $770; March 25, 1910, $715; March 25, 1911, $660; March 25, 1912, $605. The mortgage was signed by Mrs. Effie N. Conlan, but the notes were not. James G. Conlan died intestate and without issue in 1908, and Mrs. O. V. Conlan died intestate in 1910. Prior to the death of her brother, the appellant conveyed her undivided one-half interest in the lands in controversy to one Granger, who conveyed the same to J. M. Baker. James G. Conlan prior to his death paid the first note to Goodman Bros. After the death of James G. Conlan his widow, Mrs. Effie Conlan, took possession of an undivided one-half interest of which her husband died seized. She used the rents therefrom and other funds of her own not derived from these lands to pay off the remaining notes above mentioned secured by the deed of trust to Goodman Bros.

In her answer, which she made a cross-complaint, Mrs. Effie Conlan set up the payment of these notes and prayed that her dower and homestead interests in the

lands in controversy be set apart to her, and that she be subrogated to the rights of Goodman Bros. and J. M. Baker in the notes, which she paid, which with interest amounted in the aggregate to $3,954.92, and that a lien be declared in her favor for that sum on the lands in controversy, and that unless the sum be paid that the lands be sold, etc.

The appellee, Mrs. Effie Conlan, did not allege in her cross-complaint that the land in controversy was the homestead of her husband, James G. Conlan, but she prayed that her homestead interest be set apart to her and testimony was taken without objection on that question. The trial court treated that as one of the issues in the case, and found that the undivided interest of James G. Conlan in the lands in controversy was his homestead at the date of his death, he being temporarily absent therefrom, but with the intention to return. The court found that Mrs. Effie Conlan was entitled to the rents and profits of the lands in controversy from the time of her husband's death. The court also found that Mrs. Effie Conlan had paid off all the notes under the Goodman Bros. deed of trust, except the first. The court entered a decree vesting the title in fee to a one-half interest in the lands in controversy in the appellant; and vested the title of the other one-half interest in fee to J. M. Baker, and declared that Mrs. Effie Conlan was the owner of a life estate in one-half interest in the lands and that the parties were entitled to a partition according to their respective interests. The court dismissed appellant's complaint for want of equity, and entered a decree in favor of Mrs. Effie Conlan subrogating her to the rights of Goodman Bros. under the deed of trust in the sum of $4,655.50 with interest at the rate of 10 per cent. per annum from July 25, 1917, and decreed that the same was a lien on the lands in controversy and directed that unless the said sum was paid that the lands be sold to satisfy the same, and appointed a commissioner to execute the decree. The appellant duly prosecuted this appeal.

The first question for our consideration is, were the lands, at the time of the death of James G. Conlan, his homestead?

Mrs. Effie Conlan testified on this issue substantially as follows: At the time of her husband's death, which occurred in June, 1908, they were living at Hollywood, Miss. They had lived on the place in controversy, which was their home, until a short time before they went to Mississippi. They lived on the place from the time of their marriage (1905) until her husband's death. It was their home. Her husband was a contractor engaged in levee business and he had a temporary job of levee work in Mississippi. It was his plan to go back the first of the year to Lee County. At the time of his death these lands were cultivated for his benefit. On cross-examination Mrs. Conlan was asked whether her husband at the time he was occupying the place was simply holding the same as tenant and she answered, "No, he lived there and it was his home." She knew it was his home, because it was the only home that he had. He always said that it was his home and his mother said that it was.

Appellant testified that James G. Conlan, her brother, never did live on the land and make it his home. He occupied it from April, 1906, until December of the same year as a tenant. Appellant received her part of the rent. During the time that her brother lived there, he lived in one of the tenant houses just temporarily. It had two large rooms and two side rooms, it was just a negro tenant house. Negroes had lived in it. Prior to that time he had been living at J. P. Heckler's, and when he moved off the land he moved to Crittenden County and then to Mississippi. He did not at any other time live on the land or attempt to live on it and when he left he took his stock and all his household and kitchen furniture with him. Since his death his wife had never lived on the land. If her brother at the time of his death had any other home than the Lee County home, witness did not know it.

The finding of the court that the land in controversy was the home of James G. Conlan at the time of his death in 1908 is not clearly against the preponderance of the evidence. The testimony of Mrs. Conlan tends to prove that from the time of their marriage in 1905 until the death of her husband in 1908 they lived on the place; that it was their home. While the testimony shows that Conlan was a contractor, engaged in the business of building levees, which necessarily carried him away from Lee County at times, yet the testimony of Mrs. Conlan establishes the fact that this absence from Lee County was temporary, and that the land in controversy, notwithstanding this fact, continued to be their home until her husband's death.

(1) True the testimony of the appellant and her husband tends to prove that James G. Conlan only occupied the premises from April, 1906, to December of that year, and that his occupancy was that of a tenant. They seemed to have come to this conclusion from the fact that he occupied one of the houses on the place that had been formerly occupied by a negro tenant and which was designated as a tenant house. But the character of the house in which Conlan lived was immaterial if he lived in it with the intention of making it his home. In *Williams* v. *Dorris,* 31 Ark. 466, we said: "A homestead necessarily includes the idea of a house for residence, or mansion house. The dwelling may be a splendid mansion, a cabin, or tent. If there be either, it is under the protection of the law, but there must be a home residence before it, and the land on which it is situated, can be claimed as a homestead." This language has frequently been quoted with approval by this court. *Tillar* v. *Bass,* 57 Ark. 179; *Shell* v. *Young,* 78 Ark. 479; *Flowers* v. *U. S. Fidelity & Guaranty Co.,* 89 Ark. 506.

(2) The temporary absence of one claiming a homestead right does not operate as an abandonment of such right. *Brooks* v. *Goodwin,* 123 Ark. 607; *Stewart* v. *Pritchard,* 101 Ark. 141; 13 R. C. L., § 109, p. 648.

(3)   On the issue as to whether or not the lands in controversy were the home of James G. Conlan at the time of his death, Mrs. Conlan was better qualified to testify concerning the intentions of her husband with reference thereto than those less intimately associated with him.   She stated that he always said that it was his home.   Whether or not there has been an abandonment of the homestead is mainly a question of intent. *Long v. Hoffman,* 103 Ark. 574.

(4)   Therefore, it appears that James G. Conlan had the right of homestead in the lands in controversy at the time of his death and his widow thereupon succeeded to such right.   *Turner* v. *Vaughan,* 33 Ark. 454. While Mrs. Conlan did not actually reside on the premises she continued to occupy the same through her tenants and received the rents therefrom.   All of which she had the right to do until her dower was assigned. *Jarrett* v. *Jarrett,* 113 Ark. 137;   Kirby's Digest, sec. 2704.

(5)   The next question is:   Was Mrs. Conlan entitled to be subrogated to the amount of the debt which she paid?

Her husband, James G. Conlan, was the sole beneficiary of the loan for which the mortgage was executed. While Mrs. Conlan executed the mortgage conveying her homestead and dower rights, it was not her debt and she was under no obligation to pay the same.   But she. held the lands in controversy subject to the mortgage and in order to protect her interests from foreclosure it was necessary for her to discharge the mortgage indebtedness.   In *Spurlock* v. *Spurlock,* 80 Ark. 41, we held that "The right of subrogation to one paying a debt for another is extended to   *   *   *   widows discharging debts against their husbands' estates."

In *Edrington* v. *Jefferson,* 53 Ark. 545, we held, quoting syllabus: "Where a mortgage is paid by one having an interest subject to the mortgage but who is under no obligation to discharge it, as by the widow of the mortgagor, she will be subrogated to the mortgage

lien without proof of a specific intent at the time of payment to keep the mortgage alive." See also *Gainus* v. *Cannon*, 42 Ark. 503-516.

Under the above doctrine Mrs. Conlan was entitled to be subrogated to the extent of the principal of the mortgage debt which she paid and to have a lien *pro tanto* on the property from which she removed the encumbrance. The lien thus given to reimburse her is a creature of equity grounded upon the maxim, "He who asks equity must do equity." Mrs. Conlan having discharged a debt for which her husband's estate was primarily liable, she has an equity to be repaid before the estate of her husband shall go to heirs or distributees. As is said in *Gainus* v. *Cannon, supra,* "Since she was forced by the sacrifice of her own means to discharge this debt she was entitled to the full restitution in addition to the rents and profits. These she does not take by grace of the husband but by law."

The right of subrogation and the equitable remedy growing out of such right, which Mrs. Conlan invokes to have a lien declared on the land in controversy, are entirely independent of the deed of trust. It was, therefore, unnecessary to have the trustee and creditors made parties. Mrs. Conlan is not seeking a foreclosure of the deed of trust.

The remaining question is, how much did she pay? This was purely an issue of fact. The chancellor found that she paid all the notes except the first, and the appellant conceded that this finding of the chancellor was correct except as to the second note. The appellant contends that the second note was paid out of the property which belonged to the estate of James G. Conlan consisting of rents from January 1 to June 27, 1908, and other personal property. But Mrs. Conlan testified that the personal property which she received from the estate of her husband in the aggregate was but little more than the amount of the second note, all of which was used by her in paying the funeral expenses and other debts of the estate.

No testimony was adduced by the appellant to overcome this. The preponderance of the evidence shows that Mrs. Conlan paid all the notes except the first.

(6) The chancery court entered a decree in favor of Mrs. Conlan for the principal debt as well as all the interest. This decree was erroneous as to the amount of the interest. It was the duty of Mrs. Conlan, the life tenant, to keep down the interest on the encumbrance to the extent of her estate, which was a life estate in one-half the land in controversy. She was therefore liable for one-half the interest on the encumbrance. Minor on Real Property, sec. 217; 1 Wash. Real Property, sec. 239; 1 Pingree on Real Property, sec. 295.

The decree of the court is affirmed except as to the amount of interest allowed Mrs. Conlan, as to this the decree is reversed, and the cause is remanded with directions to enter a decree in accordance with this opinion and for such other and further proceedings as may be necessary to execute its decree.