KELLEY *v.* ACKER.

4-9135                                          228 S. W. 2d 49

Opinion delivered March 20, 1950.

R. D. Rouse, for appellant.

Tompkins, McKenzie & McRae, for appellee.

MINOR W. MILLWEE, Justice. W. A. McMillian died intestate at Prescott, Arkansas, survived by his widow and two married daughters, the appellant, Mrs. E. M. Kelley, and appellee, Annie Lee Acker. At the time of his death in April, 1938, Mr. McMillian owned a house and lot in Prescott which constituted his homestead. His widow continued to reside in the home until her death in January, 1949. Appellee went to live with her parents about 1929 and has since resided on the property in controversy.

Appellant, who has resided in Tulsa, Oklahoma, for many years, filed this suit against appellee to partition and sell the property, alleging that each owned an undivided half-interest therein, subject to a mortgage indebtedness due Home Owners Loan Corporation in the sum of $495. In her answer and cross-complaint, appellee denied that appellant was entitled to an equal division of the proceeds of the partition sale and alleged that appellee had discharged $739.20 of the mortgage debt to HOLC, and had paid $462.21 in repairs and $109.07 for a hot water heater, which was attached as a fixture to the property; that the amounts paid should be fixed as a lien against the property, and paid her out of the proceeds of the partition sale. In reply, appellant denied that appellee made said payments and further alleged that if she did so, she acted as a mere volunteer, and said payments should be considered as rent for her use and occupancy of the property; and that appellant was entitled to contribution for the rental value of the home since the death of their mother.

Appellee was the only witness at the trial. According to her testimony, she and a minor son went to reside with her parents about 1929. After the death of her father in 1938, she continued to reside with her mother, and during such period earned about $1,000 a year as an expression teacher, while her mother had an income of about $425 a year from an old age pension and small

contributions from a sister. She testified that her mother became an invalid shortly after her father's death and demanded constant attention; that the mother's income was used to defray her medical expenses, to purchase special foods required for her mother, and to pay utility bills; that appellee made all the monthly payments to HOLC from 1938 to 1949 from her separate funds earned as an expression teacher; that appellant made no contribution to their mother's support, except occasional small gifts, and knew that appellee was taking care of her; that she had to conduct her teaching in the home after her mother became an invalid; and that she contributed to the support of her mother and paid none of her own bills out of her mother's income.

The parties stipulated that $739.20 was paid on the mortgage indebtedness to HOLC, from the time of W. A. McMillian's death in 1938 to February, 1949, which payments were applied as follows: $337.04 toward retirement of the principal debt; $184.80, taxes and insurance; and $217.36 to payment of interest on unpaid principal. It was further stipulated that the monthly rental value of the property, from the time of Mrs. McMillian's death to the date of the sale of property on January 15, 1949, was $25.

The Chancellor found that appellee made the payments to HOLC and for the water heater out of her own funds, and that she was entitled to receive $639.20 before division of the partition sale proceeds, which sum represented the $739.20 payment to HOLC, plus $90.00 for the water heater, less $190.00 rental value of the premises since the death of the life tenant. The Commissioner was accordingly directed to pay said sum to appellee before division of the sale proceeds of $2,025.

For reversal, appellant insists that appellee's testimony to the effect that she made the payments above mentioned out of her own separate funds, and at the same time assisted in payment of her mother's living expenses, is incredible, since appellee only had an income of a little more than twice that of her mother. We do not so consider it, and hold that the Chancellor's deter-

mination of this issue is not against the preponderance of the evidence.

It is next insisted that even if appellee made the payments out of her separate funds, she is not entitled to contribution from appellant. We first consider the $337.04 payment of principal on the mortgage debt. It is the rule generally that, as between the life tenant and the owner of a future interest in property, the owner of the life interest is not compelled to pay the principal sum or debt of an encumbrance, and if he does make such payment, he is entitled to reimbursement from the reversioners or remaindermen to the extent of their interests in the property which had been subject to the encumbrance. 33 Am. Jur., Life Estates, Remainders, Etc., § 461; Restatement of the Law of Property, Vol. 1, § 132.

It is also the general rule that an heir who pays a just debt of his ancestor, or who pays more than his proportionate share, is entitled to contribution from his co-heirs. See 26 C. J. S. Descent and Distribution, § 138, where the textwriter says: ''In the absence of an express agreement on the part of the heirs to reimburse the heir paying a debt of the ancestor, the right to contribution must arise under the general principles of equity.'' In *Spurlock* v. *Spurlock,* 80 Ark. 37, 96 S. W. 753, we held that the right of subrogation to one paying a debt for another is extended to widows discharging debts against their husband's estate. In *Jefferson* v. *Edrington,* 53 Ark. 545, 14 S. W. 99, 903, where the widow of a mortgagor who was under no obligation to discharge the mortgage debt, paid it, she was held entitled to be subrogated to the mortgage lien. See, also, *McDaniel* v. *Conlan,* 134 Ark. 519, 204 S. W. 850.

In the instant case, the obligation to discharge the principal of the mortgage debt rested primarily on appellant and appellee, the remaindermen. Under the equitable rules above announced, appellee was entitled to be subrogated to the extent of the principal of the mortgage debt which she paid for the benefit of both; and the Chancellor correctly held that she was entitled to a lien

on the proceeds of the partition sale to the extent of such payment.

We are also of the opinion that the Chancellor correctly allowed contribution for installation of the hot water heater. The rule is well established that although a life tenant must keep the property in repair, he is under no general legal duty to make permanent improvements thereon. 33 Am. Jur. Life Estates, Remainders, Etc., § 456; Restatement of the Law of Trusts, Vol. 1, § 233. Compensation for permanent improvements made by a life tenant cannot ordinarily be recovered from the remaindermen. *Smith and Shoptaw* v. *Stanton,* 187 Ark. 447, 60 S. W. 2d 183.

In *Bowers* v. *Rightsell,* 173 Ark. 788, 294 S. W. 21, the Court said: ''It is well settled in this State that in his relation as tenant in common, one has a right to make improvements on the land without the consent of his co-tenants; and, although he has no lien on the land for the value of his improvements, he will be indemnified for them, whether made by himself or those claiming under him, in a proceeding in equity to partition the land between himself and co-tenants, either by having the part upon which the improvements are located allotted to him, or by having compensation for them, if thrown into the common mass . . .''

Appellee installed the hot water heater as a permanent fixture shortly before the death of her mother. The installation of the heater enhanced the value of the property in the sum of $90.00, as of the date the parties' right to occupy the property as co-tenants accrued, which is the proper measure of the amount of recovery. *Staples* v. *Pearson,* 230 Ala. 62, 159 So. 488, 98 A. L. R. 852.

As to appellee's payment of the taxes, insurance and interest on the mortgage debt, a different rule applies. Under Ark. Stats. (1947), § 84-921, the duty rested upon the life tenant to pay the general taxes. Section 84-925 also provides for forfeiture of a life estate for the failure to pay taxes. The general rule is that the remainder-

man, paying taxes during the estate of a life tenant, is not entitled to contribution from his co-tenants. Anno. 48 A. L. R. 594.

We have also held that it is the duty of the life tenant to keep down the interest on encumbrances upon the property of the estate. See *McDaniel* v. *Conlan, supra,* and 31 C. J. S., Estates, § 48. We think the payment of insurance premiums on the mortgaged property falls in the same category as the payment of interest and taxes. See Restatement of the Law of Trusts, Vol. 1, § 233(e). The property was already encumbered by the mortgage when the life tenant came into possession, and the insurance premiums were included in the monthly payments to HOLC. In *Livesay* v. *Boyd,* 164 Va. 528, 180 S. E. 158, where the estate was subject to a mortgage executed by the donor of the life estate and contained a covenant that buildings on the estate should be kept insured, the Court held that the premiums must be paid by the life tenant. Here appellee was occupying the property rent free; and her payments of taxes, insurance and interest on the mortgage debt discharged obligations for which the life tenant was primarily responsible. Under the circumstances, we think such payments should be presumed as gifts to her mother, particularly in the absence of any evidence of an agreement on the part of appellant to be bound by such payments.

The decree of the trial court, allowing contribution for payments by appellee of the principal on the mortgage debt and the value of the hot water heater installed on the property is therefore affirmed. That part of the decree which entitles her to contribution for payments of taxes, insurance and interest on the mortgage debt is reversed and the cause remanded, with directions to enter a decree in accordance with this opinion. The costs of this appeal will be paid equally by the parties.